# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| LARRY CUNNINGHAM | CIVIL ACTION NO: 17-CV-01056 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Larry Cunningham ("Plaintiff") filed the instant lawsuit against the City of Shreveport ("the City"), Chief of Police Alan Crump, Deputy Chief of Police Bill Goodin, Assistant Chief of Police David Kent, and Captain Timothy Beckius (collectively "Defendants") alleging violations of his rights secured by the United States Constitution, the Louisiana Constitution, and Louisiana statutory law. Record Document 1, ¶s 1, 35 & 38. Now before the Court are Defendants' Motion for Partial Summary Judgment [Record Document 17] and Plaintiff's Motion for Partial Summary Judgment [Record Document 19], both filed pursuant to Federal Rule of Civil Procedure 56. Upon consideration of the briefs filed by the parties and for the reasons set forth below, Defendants' Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

## I.    Factual Background

The following paragraphs outline Plaintiff's factual allegations as contained in his complaint. Plaintiff states that he was an employee of the Shreveport Police Department ("SPD") for over 32 years and had attained the rank of Captain when the events of this case took place. Record Document 1, ¶ 4. Beginning on December 25, 2016, Plaintiff had to take sick leave from

work for several months because of a non-duty related muscle strain. *Id.* at ¶s 5 & 8. During this time Plaintiff grew a beard as he normally did during vacations and extended weekends. *Id.* at ¶ 7.

Plaintiff states that a large part of his Christian faith includes "the strength that comes from wearing beards as set forth throughout the Christian Bible." *Id.* at ¶ 6. He claims that he and his family are strong believers of the Christian faith and that beards have symbolized "strength in faith and worship in his family." *Id.* Plaintiff states that the men in his family have worn beards to show their faith in God. *Id.*

During his extended sick leave, Plaintiff noticed that his beard "strengthened his faith in God and his ability to express and show his religious views to others." *Id.* at ¶ 7. Plaintiff's father told him that "he was glad that [Plaintiff] had finally acted like the Elder in the family." *Id.* Plaintiff also believes that it was a "sign" that he started growing his beard on December 25, 2016. *Id.*

Plaintiff was scheduled to report to the police academy on May 1, 2017, to qualify with his service weapon so he could return to work. *Id.* at ¶ 8. Sometime in April of 2017, Plaintiff went to SPD to turn in his SPD-3 form that released him to return to full effective duty and spoke to SPD's Assistant Chief of Police David Kent ("Kent") about obtaining a religious exemption to SPD's policy against officers wearing beards. *Id.* at ¶s 8 & 11. At that time, SPD General Order 302.01 (the "no-beard policy"), along with SPD General Order 901.05, prohibited officers from wearing beards.[1] *Id.* at ¶ 9; Record Document 19-4, p. 18. Exemptions from this policy were available for officers with certain medical conditions and officers serving on certain assignments. *Id.* at ¶s 9 & 10. Kent advised Plaintiff that he needed to put his request for a religious exemption to the no-

---

[1] SPD changed its grooming policy in the Fall of 2018 to allow beards less than ¼ inch in length. Record Document 19-4, pp. 22 & 24.

beard policy in writing. *Id.* at ¶ 11. Plaintiff submitted his request for an exemption in writing on April 25, 2017. *Id.*

On April 28, 2017, Sergeant Harlow, who worked in SPD's Human Resources Bureau, told Plaintiff that he was being sent for a fitness for duty examination and would not be returning to work on the previously scheduled date. *Id.* at ¶ 12. Plaintiff believes that Harlow was instructed to request this fitness for duty examination by Kent, Deputy Chief of Police Bill Goodin ("Goodin"), or Captain Timothy Beckius ("Beckius") in retaliation for Plaintiff's request for a religious exemption. *Id.* Plaintiff asked Kent why he was being sent for a fitness for duty exam and about the status of his religious exemption from the no-beard policy. *Id.* at ¶ 13. Kent responded that Plaintiff needed to undergo the exam because of his extended sick leave and back pains and that his requested exemption had not been approved. *Id.* On May 1, 2017, Plaintiff emailed Kent and requested additional information about why he needed to undergo a fitness for duty exam. *Id.* at ¶ 14. Plaintiff told Kent that he was not experiencing any back pain and that being off work would cost him approximately $800 a week. *Id.* Kent's only response was an email stating that SPD needed more information regarding Plaintiff's religious exemption from the no-beard policy. *Id.* at ¶ 14.

On May 4, 2017, Plaintiff submitted a memo to Kent that detailed his religious convictions about his beard and advised that he intended to keep his beard at a "reasonable length." *Id.* at ¶ 16. In this memo, Plaintiff claimed that granting this exemption would not be an unreasonable hardship because SPD allowed exceptions to the no-beard policy for medical reasons. *Id.* The memo also stated that Plaintiff was attempting to resolve the issue with SPD before he resorted to filing a lawsuit. *Id.* at ¶ 17.

Plaintiff underwent a fitness for duty exam and was cleared to return to work by the City's physician. *Id.* at ¶s 18 & 19. Plaintiff claims that Kent and Beckius interfered with his ability to obtain a necessary form for his exam in retaliation for his request for an exemption to the no-beard policy. *Id.* at ¶ 18. Despite being cleared for duty, Plaintiff received a letter from Beckius on May 8, 2017, that placed him on departmental leave without giving a reason. *Id.* at ¶ 19. Plaintiff submits that SPD guidelines state that departmental leave is "the absence from scheduled duty following a traumatic event, administrative or criminal investigation, approved training or other reasons approved by the chief of police and/or designee." *Id.*

On May 9, 2017, Plaintiff emailed Beckius asking for an explanation as to why he was placed on departmental leave. *Id.* at ¶ 20. Plaintiff told Beckius that he was concerned that he was being placed on departmental leave because of his religious exemption request. *Id.* Beckius never responded to this email. *Id.* Plaintiff was never told why he was placed on departmental leave and claims that "the only possible conclusion is that these actions were taken as a result of his religious beliefs and request for accommodation." *Id.*

On June 23, 2017, Kent sent Plaintiff a memo stating that his request for a religious exemption from the no-beard policy had been denied. *Id.* at ¶ 21. The memo explained that the no-beard policy was in place "for officer safety reasons and to promote a uniform appearance of all officers of [SPD] to the general public." *Id.* The memo concluded that no reasonable accommodation could be made for Plaintiff's request. *Id.*

Plaintiff reported to SPD on June 26, 2017, to qualify with his service weapon. *Id.* at ¶ 22. Plaintiff saw Kent that day and Kent told Plaintiff that he would not be considered fit for duty if he returned to work with a beard. *Id.* After he qualified with his service weapon, Plaintiff met with Kent and Goodin to discuss his return to work and his beard. *Id.* at ¶ 23. Plaintiff asked what safety

interests prevented him from having a beard that did not prevent officers from having beards for medical reasons. *Id.* Goodin responded that he would have to check with the City Attorney and that beards were against SPD policy. *Id.* Goodin also stated that Chief of Police Alan Crump ("Crump") made the decision to deny Plaintiff's request. *Id.* The meeting ended with Goodin telling Plaintiff that his request for an exemption from the no-beard policy was still denied. *Id.* at ¶ 24. Plaintiff perceived that statement to mean that if he returned to work with his beard, he would be subject to discipline and further harassment by SPD. *Id.*

On June 27, 2017, Plaintiff, through his legal counsel, submitted a letter directly to Crump regarding his religious exemption request. *Id.* at ¶ 26. The letter outlined the alleged harassment that Plaintiff was subjected to after submitting his request for a religious exemption from the no-beard policy, the denial of his request, and the existence of medical exemptions from the no-beard policy. *Id.* The letter stated that denying Plaintiff's request for a religious exemption would violate the United States Constitution, the Louisiana Constitution, and Louisiana statutory law. *Id.* at ¶ 26. The letter also requested that Crump "immediately advise [Plaintiff] that he could report to work with his beard without any disciplinary consequences." *Id.* Crump never responded to this letter. *Id.*

Plaintiff reported to work on June 30, 2017, wearing "acceptable nonuniform business attire" and his beard. *Id.* at ¶ 28. Kent saw Plaintiff when he entered SPD and advised him that he was unfit for duty because of his beard. *Id.* Kent told Plaintiff to wait in his office while Kent went to speak to Goodin. *Id.* Kent returned and advised Plaintiff that he was being placed on departmental leave by the Internal Affairs Bureau ("IAB"). *Id.* at ¶ 29. Sergeant Michael Tyler ("Tyler") with the IAB came to Kent's office and delivered Plaintiff a memo from Captain Gayle McFarland, commander of IAB. *Id.* The memo stated that Plaintiff was being placed on

departmental leave by IAB and that he was required to report to IAB by telephone every weekday. *Id.* Plaintiff claims that this is not standard procedure for departmental leave. *Id.* The memo did not state that Plaintiff had committed any rule violation. *Id.* Plaintiff claims that he was placed under IAB supervision because he was being investigated regarding his beard. *Id.* Tyler proceeded to take Plaintiff's service weapon and commission card. *Id.* Plaintiff states that those items are typically only taken from an officer "if SPD and the Chief or his designee have decided that the officer has committed an offense likely to result in termination or some other severe discipline." *Id.*

Plaintiff claims that Defendants' actions forced him to submit his retirement papers, resulting in a constructive discharge. *Id.* at ¶ 31. Plaintiff states that Crump, Goodin, Kent, Beckius, and SPD "made it clear to [Plaintiff] that they would continue to harass him" and that being investigated meant he would most likely be terminated. *Id.* Additionally, Plaintiff alleges that it is the standard practice of SPD and Crump to notify the media when an officer is placed on departmental leave and subject to investigation by the IAB, even though such a practice is contrary to Louisiana civil service law. *Id.* at ¶ 30. Plaintiff claims that he submitted his retirement papers in part to avoid his placement on departmental leave from being made public, which would have caused him to suffer public embarrassment and could have hurt his ability to find other employment. *Id.* at ¶s 30 & 31.

Plaintiff filed the instant lawsuit on August 21, 2017. Record Document 1. Plaintiff alleges that Crump, Kent, Goodin, and Beckius are liable to him in their individual and official capacities for violations of his right to the free exercise of religion protected by both the Louisiana and the United States Constitutions, as well as violations of Louisiana Revised Statutes § 23:303 and § 23:332, which prohibit religious discrimination against employees. *Id.* at ¶s 1, 35, 36, & 38. He

also claims that the City should be held liable to him because SPD's no-beard policy was the moving force behind the violation of his constitutional rights. *Id.* at ¶ 37. Plaintiff requests compensatory damages including income lost while not being able to perform off-duty employment, lost wages, benefits, retirement contributions and income due to his constructive discharge, and general damages. *Id.* at ¶ 39. Plaintiff also seeks punitive damages, attorney's fees, and court costs. *Id.* at ¶s 39 & 40.

## II. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated

allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## III.   Defendants' Motion for Partial Summary Judgment

Defendants' motion for partial summary judgment argues that Plaintiff's claims against the individual Defendants in their official capacities must be dismissed as a matter of law. Record Document 17-2, p. 5. The motion also asserts that Plaintiff cannot show that Goodin, Kent, or Beckius caused any constitutional harm because Crump was the final decision-maker behind all of the major events in this case. *Id.* at 6. Defendants argue that because Crump was the only one with authority to take any of the actions complained of by Plaintiff, the claims against Goodin, Kent, and Beckius should be dismissed.[2] *Id.* at 7–8.

---

[2] Although the City of Shreveport is listed as a party to this motion, nothing in the motion itself involves Plaintiff's claims against the City of Shreveport. *See* Record Documents 17 & 17-2.

## A. Official Capacity Claims Against Individual Defendants

Plaintiff brings claims against the City and against Crump, Goodin, Kent, and Beckius in their individual and official capacities. Record Document 1, ¶ 1. An official capacity suit against a municipal officer duplicates a suit against the officer's municipality. *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A district court faced with both claims may dismiss the official capacity claim. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (citing *Flores v. Cameron Cty.*, 92 F.3d 258, 261 (5th Cir. 1996)). Therefore, Defendants' motion for partial summary judgment is **GRANTED** as to the official capacity claims against Crump, Goodin, Kent, and Beckius. Those claims are hereby **DISMISSED WITH PREJUDICE** as duplicative of the municipal liability claims against the City.

## B. Individual Capacity Claims Against Beckius

In his opposition, Plaintiff concedes that summary judgment is proper as to Beckius and that the claims against him should be dismissed. Record Document 21, p. 7. Therefore, Defendants' motion for summary judgment is **GRANTED** as to the individual capacity claims against Beckius. Plaintiff's claims against Beckius are hereby **DISMISSED WITH PREJUDICE**, and he is no longer a party to this action.

## C. Individual Capacity Claims Against Goodin and Kent

### 1. Arguments of the parties

Plaintiff alleges that Crump, Kent, and Goodin are liable to him in their individual capacities for violations of his constitutional right to the free exercise of religion pursuant to Title 28 U.S.C. § 1983. Record Document 1, ¶ 36. He also argues that they are liable to him for violations of the free exercise clause of the Louisiana Constitution and Louisiana statutory law. *Id.*

at ¶s 36 & 38. In their motion, Defendants contend that Goodin and Kent cannot be held responsible for any constitutional violations because all of the decisions that Plaintiff complains of were made by Crump. Record Document 17-2, p. 6. Defendants quote multiple portions of Crump's deposition where he states that he is ultimately the one who decides when an officer should undergo a fitness for duty exam, whether an officer should be placed on departmental leave, and whether a request for an exemption from the no-beard policy will be granted. *Id.* at 6–7. Defendants argue that Plaintiff's claims against the individual defendants other than Crump should be dismissed because Crump had the final decision-making authority in all matters relevant to this case. *Id.* at 7–8.

In his opposition, Plaintiff argues that factual issues exist as to whether Goodin and/or Kent participated in the violation of his constitutional rights. Record Document 21, p. 6. Plaintiff lists twelve different actions or events that he claims represent personal involvement by Kent and Goodin in the violation of his constitutional rights. *Id.* at 8–14. Plaintiff asserts that because there are factual questions as to whether Kent and Goodin were personally involved in the violation of his rights, their motion for summary judgment should be denied. *Id.* at 20.

In their reply, Defendants cite Fifth Circuit case law stating that a plaintiff must "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." Record Document 28, p. 2. (quoting *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995)). Defendants assert that the only act that caused Plaintiff's alleged constitutional violation was the denial of his request for an exemption from the grooming policy. *Id.* Defendants argue that because the decision to deny the exemption was made by Crump, Goodin and Kent cannot be individually liable for any constitutional harm caused by that decision. *Id.*

2.    Applicable law

Title 42, United States Code, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To assert a claim for damages under this statute, a plaintiff must demonstrate (1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Floyd v. City of Kenner, La.*, 351 F. App'x 890, 897 (5th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). The Fifth Circuit has held that to recover under § 1983, a plaintiff must show that a defendant was either (1) personally involved in the constitutional violation or (2) causally connected to the constitutional violation alleged. *Pechon v. La. Dept. of Health and Hosps.*, 368 F. App'x 606, 610 (5th Cir. 2010) (per curiam) (citing *Woods*, 51 F.3d at 583).

The issue of whether or not a defendant was personally involved in the violation of a plaintiff's constitutional rights, and therefore individually liable under § 1983, is typically raised by a defendant when a plaintiff attempts to assert liability against a supervisor that he or she did not interact with directly. *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *Woods*, 51 F.3d at 583; *Anderson v. Pasadena Indep. School Dist.*, 184 F.3d 439, 443–44 (5th Cir. 1999). Here, Defendants make the opposite argument: that only Crump should be liable under § 1983, even though Plaintiff never interacted with him directly.

3. <u>Analysis</u>

The Court finds that Defendants have failed to provide legal support for their argument that only Crump can be held responsible for Plaintiff's constitutional violation because Crump was the only one who caused the alleged violation. The Fifth Circuit case law that Defendants themselves cite states that an individual can be liable under § 1983 when they are either "personally involved in" or "causally connected" to a constitutional violation. *Woods*, 51 F. 3d at 583. Defendants propose a causation standard of liability under § 1983 that is much narrower than the standard enunciated by the Fifth Circuit and do not provide the Court with any cases where their proposed standard has been applied.

Based upon the commonly understood meaning of the phrase "personally involved," and construing the facts in the light most favorable to the Plaintiff, the Court finds that a genuine issue of material fact exists as to whether Goodin and Kent were personally involved in Plaintiff's alleged constitutional violation and are therefore subject to individual liability under § 1983. *Celotex*, 477 U.S. at 322. Kent instructed Plaintiff to put his request in writing and then wrote the memo denying that request. Record Document 28, pp. 2 & 4. After this denial, Plaintiff had a meeting with Kent and Goodin to discuss the beard issue and his return to work, during which Goodin informed Plaintiff that having a beard was against SPD policy. Record Document 21, p. 12. During this same meeting, Goodin verbally denied Plaintiff's request for an exemption. Record Document 28, p. 5. Clearly, factual issues exist as to whether Kent and Goodin were personally involved in the denial of Plaintiff's exemption request. *See Woods,* 51 F. 3d at 583.

Crump's deposition testimony also indicates the involvement of Kent and Goodin. It is uncontested that Crump was the individual with final decision-making authority on whether Plaintiff's request would be granted or denied. Record Document 21-1, ¶ 10. However, during his

deposition Crump could not remember how the decision of whether to grant or deny the request came to his attention and could not recall actually making the decision. Record Document 19-3, p. 36. Crump could not say for sure whether he instructed Kent to deny Plaintiff's request and did not remember signing any paperwork to that effect or giving Kent verbal instructions to do so. *Id.* at 37–38. Even if Crump made the final decision to deny Plaintiff's request for a religious exemption from the no-beard policy, Kent and Goodin likely had some degree of personal involvement in that denial. Therefore, Defendants' motion for summary judgment is hereby **DENIED** as to the individual capacity claims against Kent and Goodin.

## IV.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff has filed a motion for partial summary judgment on his federal and Louisiana law claims against the City and against Crump in his official and individual capacity. Record Document 19-2, pp. 28–29. Plaintiff's claims against Crump in his official capacity have already been dismissed as duplicative of his claims against the City,[3] so the Court will only consider whether genuine factual issues exist that would prevent the entry of summary judgment against the City and Crump in his individual capacity.

Plaintiff claims that he is entitled to a finding that Crump and the City are liable for violating his "federal and state constitutional rights, the Louisiana Anti-Discriminatory law, and the Louisiana Preservation of Religious Freedom Act." Record Document 19-2, p. 8. Plaintiff argues that SPD's no-beard policy violated the Free Exercise Clause of the First Amendment to the United States Constitution both on its face and as applied.[4] *Id.* at 11–12. Plaintiff also asserts

---

[3] *Supra*, p. 9.
[4] The entirety of Plaintiff's argument on this point is as follows:
    B. SPD's beard policy made exceptions for secular reasons but not religious
    reasons and violated law on its face

the no-beard policy is subject to strict scrutiny. *Id.* at 29. Finally, Plaintiff alleges that the no-beard policy violated the Louisiana Constitution and Louisiana's anti-discrimination statutes. *Id.* at 25–26.

### A. First Amendment Claims

#### 1. The Free Exercise Clause

The Free Exercise Clause of the First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof.*" U.S. Const. amend. I (emphasis added). It has been applied to the States through the Fourteenth Amendment. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). The First Amendment protects both the freedom to believe and the freedom to act. *Cantwell v. State of Conn.*, 310 U.S. 296, 303 (1940). While the freedom to believe is absolute and can never be restricted by the government, the freedom to act must sometimes be regulated by the government for the protection of society. *Id.* at 304. The Free Exercise Clause applies when a particular law "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Lukumi*, 508 U.S. at 532.

"The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental

---

Since 1997, the SPD Grooming Policy contained in its General Orders made exceptions for medical conditions. Since 1997, the SPD Grooming Policy contained in its General Orders also made exceptions for special assignments. However, none of the policies from 1997 through 2017 contained exceptions for religious purposes or accommodations.

C. SPD beard policy violated law as applied

Chief Crump admitted that accommodations are made for officers with medical conditions and duty assignments. Chief Crump admitted he personally had granted at least 4 medical waivers.

Record Document 19-2, pp. 11–12 (citations omitted).

interest justifies the burden." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). A law that targets religious conduct for distinctive treatment will be evaluated under the lens of strict scrutiny. *Lukumi*, 508 U.S. at 546. The application of strict scrutiny means that such a law is invalid unless it is justified by a compelling government interest and is narrowly tailored to advance that interest. *Id.* at 533. Only government interests of the highest order can outweigh "legitimate claims to the free exercise of religion." *Wisconsin v. Yoder*, 406 U.S. 205, 2015 (1972).

In *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878–79 (1990), the Supreme Court held that the Free Exercise Clause does not exempt an individual from complying with a law that places an incidental burden on religious exercise so long as that law is facially neutral and generally applicable. The Court also held that such generally applicable and facially neutral laws would not be subjected to strict scrutiny. *Id.* at 886–87. However, facial neutrality in the language of the law itself is not the end of the neutrality analysis. *Lukumi*, 508 U.S. at 534.

In *Lukumi*, the Supreme Court stated that "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Id.* In that case the Court struck down three city ordinances that prohibited ritual animal sacrifice. *Id.* at 524 & 526. The ordinances were facially neutral, but the Court found that there was significant evidence in the record to show that the ordinances were created out of discriminatory intent against the Santeria religion, which engages in ritual animal sacrifice as a form of worship. *Id.* at 534. The Court stated that regardless of a law's text, it cannot be neutral if its object is to infringe upon or restrict practices because of their religious motivation. *Id.* at 533. The Supreme Court also held that the ordinances were not neutral because they contained a series of exemptions that were applied to certain types of animal killing, but not to animal-killing that

was religiously motivated. *Id.* at 537. To the Court, this reflected a value judgment by the city that non-religious animal killings were more important than religious animal killings. *Id.*

2.  Free Exercise Clause as applied to no-beard policies

Plaintiff argues that SPD's no-beard policy should be subject to strict scrutiny because it allows for medical exemptions but not religious ones.[5] Record Document 19-2, p. 29. The Fifth Circuit has not specifically addressed whether a police department policy that prohibits beards violates the Free Exercise Clause. However, in *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999), the Third Circuit faced exactly this question.

In *City of Newark*, the Newark Police Department had a policy that prohibited its officers from wearing beards. *Id.* at 360. The department regularly allowed medical exemptions from the no-beard policy, typically based on a condition known as pseudo folliculitis barbae. *Id.* Two police officers who were devout Sunni Muslims were disciplined under the policy for growing out their beards in obedience to their religious beliefs. *Id.* at 360–61. The officers sued, challenging the police department's enforcement of the no-beard policy under the Free Exercise Clause and requesting permanent injunctive relief from its enforcement. *Id.* at 361. The district court agreed that the policy violated the plaintiffs' First Amendment rights and permanently enjoined the police department from enforcing the policy. *Id.*

On appeal, the Third Circuit held that the no-beard policy should be subject to heightened scrutiny[6] because the department approved "secular" exemptions from the policy for medical

---

[5] Plaintiff alleges in his complaint that Kent told him to submit a written request for a religious exemption to the no-beard policy. Record Document 1, ¶ 11. This written request was ultimately denied. *Id.* at ¶ 21. However, Defendants do not dispute that the no-beard policy did not contain a religious exemption as written. In fact, in Crump's deposition testimony he stated that SPD didn't have a policy governing religious exemptions at the time. Record Document 19-3, p. 31.

[6] The court in *City of Newark* "assume[d] that an intermediate level of scrutiny applie[d]," as opposed to strict scrutiny, because the case arose in the context of public employment and because

reasons but refused to approve exemptions that were requested for religious reasons. *Id.* at 365. The court cited passages from *Smith* and *Lukumi* that addressed exemptions that were made to the policies at issue in those cases. *Id.* at 364 (quoting *Smith*, 494 U.S. at 884) ("[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason."); *Id.* at 364–65 (quoting *Lukumi*, 508 U.S. 537) ("[T]his ordinance represents a system of individualized governmental assessment of the reasons for the relevant conduct . . . [r]espondent's application of the test of necessity devalues religious reasons for killing by judging them to be of lesser import than nonreligious reasons."). Based on those cases, the Third Circuit found that the no-beard policy was not a neutral and generally applicable law that could avoid heightened scrutiny. *Id.* at 366.

For the same reasons enunciated by the Third Circuit in *City of Newark*, the Court finds that SPD's no-beard policy, as set forth in SPD General Order 302.01, should be subject to heightened scrutiny. *See* Record Document 19-4, p. 18. Like the no-beard policy in the Newark Police Department, SPD's no-beard policy also allowed officers to wear beards for medical reasons. *Id.* at 19. The policy required officers seeking a medical exemption to the grooming policy to submit a letter from their treating physician to their supervisor, who would then forward the letter through the chain of command to the chief for review and consideration. *Id.* If the request for a medical exemption was granted, the officer would be required to repeat this process every 90 days. *Id.* In his deposition, Crump testified that he had signed medical waivers to the no-beard policy, but did not recall how many. Record Document 19-3, p. 42. SPD General Order 302.01

---

it found that the police department's actions could not survive even that level of scrutiny. 170 F.3d at 366 n.7.

clearly outlines a system of individualized exemptions from the no-beard policy for secular reasons that were not available for religious reasons. *See id.*

The memo that Kent sent to Plaintiff denying his request for a religious exemption stated that the grooming policy was "in place for officer safety reasons and to promote a uniform appearance of all officers of the Shreveport Police Department to the general public." Record Document 19-4, p. 49. During his deposition, Crump agreed that a beard grown for medical reasons would present the same concerns about officer safety and uniformity of appearance as a beard grown for religious reasons. Record Document 19-3, pp. 44–45. Like the Newark Police Department in *City of Newark*, SPD has undermined the stated interests of its no-beard policy by allowing medical exemptions. *City of Newark*, 170 F.3d at 366. These medical exemptions indicate that SPD made a value judgment that "secular (i.e., medical) motivations for wearing a beard are important enough to overcome its [stated interest] but that religious motivations are not." *Id.* SPD has failed to provide any reasons why a religious exemption would undermine its goals of officer safety and uniformity of appearance any more than a medical exemption would. *Id.* From the record, it appears that Crump and SPD simply viewed medical exemptions to the no-beard policy as more important than religious exemptions. *See* Record Document 19-3, p. 52–53. This is precisely the type of value judgment that renders a law discriminatory and triggers the application of strict scrutiny to an otherwise facially neutral law. *See Lukumi*, 508 U.S. at 537–38. Therefore, the Court holds that SPD's no-beard policy should be evaluated by heightened scrutiny.[7]

---

[7] The Court notes that the issue of what level of scrutiny should be applied to the no-beard policy was not addressed in Defendants' opposition because that opposition focused on the preliminary issue of whether Plaintiff had a sincerely-held religious belief. At this stage, the Court's impression is that strict scrutiny should be applied to the no-beard policy. However, the Court will accept pretrial briefing from Defendants arguing that some form of intermediate scrutiny is more appropriate. This briefing will be discussed at the pretrial conference.

In *City of Newark*, the Third Circuit ultimately found that the no-beard policy could not survive heightened scrutiny. 170 F.3d at 366–67. Although the facts of the instant case align closely with *City of Newark*, the Court declines to reach the same conclusion at this stage. In that case, the defendants did not challenge the sincerity of the plaintiffs' belief that growing a beard was an important part of their Sunni Muslim faith. *Id.* at 361. However, Defendants in the instant case argue that factual issues regarding the sincerity of Plaintiff's beliefs prevent the entry of summary judgment on this issue. Record Document 27, p. 12. For the reasons discussed below, the Court agrees that the issue of Plaintiff's sincerity should be determined by the finder of fact at trial.

### 3. Sincerity under the Free Exercise Clause

"The protection of the free exercise clause extends to all sincere religious beliefs . . . ." *Ferguson v. Comm'r*, 921 F.2d 588, 589 (5th Cir. 1991) (per curiam). In order to plead a valid free exercise claim, a plaintiff must allege that "the government has impermissibly burdened one of his 'sincerely held religious beliefs.'" *Watts v. Fla. Intern. Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) (quoting *Frazee v. Ill. Dept. of Emp't Sec.*, 489 U.S. 829, 834 (1989)). A sincerely held religious belief is also a necessary element of a plaintiff's claim under statutes that provide greater protection for First Amendment freedoms than the Constitution itself, such as the Religious Freedom Restoration Act ("RFRA") (*Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013)); the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (*Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d 781, 790 (5th Cir. 2012)); Title VII (*Davis v. Fort Bend Cty.*, 736 F.3d 480, 485 (5th Cir. 2014)); and state statutes that were passed after the Supreme Court held that RFRA could not apply to states, such as the Texas Religious Freedom Restoration Act

("TRFRA") (*A.A. ex rel. Betenbaugh v. Needville Indep. School Dist.*, 611 F.3d 248, 260 (5th Cir. 2010)).

It is well-established that when a court assesses the sincerity of an individual's religious belief, it may not weigh the truth or falsity of the belief itself. This distinction was enunciated by the Supreme Court in *United States v. Seeger*, 380 U.S. 163, 184–85 (1965):

> "Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are as real as life to some may be incomprehensible to others." Local boards and courts in this sense are not free to reject beliefs because they consider them "incomprehensible." Their task is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious.

(quoting *United States v. Ballard*, 322 U.S. 78, 86 (1944)). The truth or validity of a particular religious belief may not be challenged, but "there remains the significant question whether it is 'truly held.'" *Id.* at 185.

The Fifth Circuit has stated that it has had few opportunities to conduct an inquiry into the sincerity of a religious belief because sincerity is not often challenged. *McAlister v. Livingston*, 348 F. App'x 923, 935 (5th Cir. 2009) (per curiam). Moreover, "[s]incerity is generally presumed or easily established." *Moussazadeh*, 703 F.3d at 791. Claims of sincere religious beliefs have been accepted based on "little more than the plaintiff's credible assertions." *Tagore*, 735 F.3d at 328. In fact, a plaintiff's sincerity is "largely a matter of individual credibility." *Id.* As such, a determination of sincerity is fact-specific and requires a case-by-case analysis. *Moussazadeh*, 703 F.3d at 791.

### i.    *Arguments of the parties*

Defendants argue that enough evidence exists to create a genuine issue of material fact as to whether Plaintiff's beliefs about his beard are sincerely religious or mere personal preferences. Record Document 27, p. 12. Defendants point to several facts that they argue undermine

Plaintiff's claim that he has a sincere religious belief in his need for a beard. *Id.* at 12–19. Based on these alleged inconsistencies, Defendants claim that a reasonable jury could find that Plaintiff's religious belief in his need for a beard is insincere. *Id.* at 19.

Plaintiff responds that Defendants offer no evidence to contradict his sincerity of belief but offer only conclusory statements in support of their arguments. Record Document 31, pp. 2–3. Plaintiff also claims that sincerity of belief is an issue that can be properly evaluated at the summary judgment stage. *Id.* at 6.

### ii.     Analysis

The Court finds that Defendants have provided sufficient evidence to show that a genuine issue of material fact exists as to whether Plaintiff's beliefs are sincerely held. *Celotex*, 477 U.S. at 322. Certain statements in Plaintiff's deposition seem to indicate that he believes that his Christian faith requires him to grow a beard. *See* Record Document 27-2, p. 48 (stating that it is a religious tenet that he was taught throughout his childhood as a sign of being a "man of God"). On the other hand, certain statements in Plaintiff's deposition seem to indicate that growing a beard was merely his personal preference. *See id.* at 32 (stating that he grew a beard because he needed a reminder of his recommitment to God and also to his family). Plaintiff's affidavit states he generally did not shave during vacations and other extended breaks. Record Document 19-3, p. 5. Defendants also point to portions of Plaintiff's deposition that appear to undermine the importance of beards as a form of religious obedience to the men in Plaintiff's family. Record Document 27, p. 15. Because factual issues exist as to Plaintiff's sincerity, it should be determined at trial rather than on summary judgment.

Plaintiff argues that religious sincerity can be properly decided at the summary judgment stage. Record Document 31, pp. 6–7. However, the cases he cites in support of this argument are

easily distinguishable from the case at hand. In those cases, the defendants either did not offer any evidence to contradict the plaintiff's sincerity or did not dispute the subjective sincerity of the plaintiff's beliefs. *Parkell v. Senato*, C.A. No. 14-446-LPS, 2019 WL 1435883 at \*5 (D. Del. Mar. 31, 2019); *Telfair v. Fed. Exp. Corp.*, 934 F. Supp. 2d 1368, 1381 (S.D. Fla. 2013). As discussed above, Defendants have presented evidence contrary to Plaintiff's sincerity of belief and challenged the subjective sincerity of Plaintiff's religious beliefs. Therefore, these cases are inapplicable to the case at hand.

On summary judgment, the Court is required to view the evidence in the light most favorable to the non-movant. *Celotex*, 477 U.S. at 322. Viewed in such a light, the evidence that Defendants have provided demonstrates a factual issue regarding Plaintiff's sincerity. *See* Record Document 27, p. 16. Accordingly, summary judgment is inappropriate. Plaintiff's motion for summary judgment is **DENIED** as to his claims against Crump and the City of Shreveport under the Free Exercise Clause.

### B. Louisiana Constitutional Claims

Plaintiff claims that he is entitled to a partial summary judgment finding that Crump and the City violated his state constitutional rights as well as his federal constitutional rights. Record Document 19-2, p. 8. Louisiana's Constitution contains a Free Exercise Clause that is nearly identical to the Free Exercise Clause contained in the United States Constitution. *See* L.A. Const. art. 1, § 8; U.S. Const. amend. I. The Louisiana Supreme Court has held, in the context of the freedom of the press, that the Louisiana Constitution's guarantee of liberties "was designed to serve the same purpose and provides at least coextensive protection" as the United States Constitution does. *State v. Franzone*, 384 So. 2d 409, 411 (La. 1980). Because of the common purpose of the Louisiana and United States Constitutions regarding freedom of the press, and

because of the similarity between the Free Exercise Clauses in the Louisiana and the United States Constitutions, the Court finds that its above analysis of Plaintiff's Free Exercise Clause claim under the United States Constitution also applies to his Louisiana Constitutional claim. Therefore, Plaintiff will need to establish his sincerity of belief to show a violation of Louisiana's Free Exercise Clause. Because the issue of Plaintiff's sincerity is a factual matter to be determined at trial, summary judgment is **DENIED** as to Plaintiff's Louisiana Constitutional claims.

### C. Louisiana Statutory Claims

Plaintiff argues that he is entitled to summary judgment against Crump and the City on the issue of liability under Louisiana statutory law. Record Document 19-2, pp. 29–30. Plaintiff cites the Louisiana Employment Discrimination Law ("LEDL"), Louisiana Revised Statutes §§ 23:301– 23:372, which states that it is unlawful for an employer to intentionally discriminate against an individual because of that individual's religion. *Id.*; La. Stat. Ann. § 23:332(A)(1). As Plaintiff points out in his motion, the LEDL is substantively similar to Title VII. Record Document 19-2, p. 26; *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 477 (5th Cir. 2002). Because of this similarity, Louisiana courts have routinely looked to federal Title VII jurisprudence for guidance in evaluating LEDL claims. *Plummer v. Marriott Corp.*, 94-2025 (La. App. 4 Cir. 4/26/95); 54 So. 2d 843, 848. Title VII requires a plaintiff to show that he held a bona fide religious belief. *Davis*, 765 F.3d at 485. Whether or not a plaintiff holds a bona fide religious belief is a question of sincerity. *Id.* As discussed above, the Court finds that genuine issues of material fact exist as to the sincerity of Plaintiff's religious beliefs. Therefore, summary judgment is hereby **DENIED** as to Plaintiff's claims under the LEDL.

Plaintiff's motion also references Louisiana's Preservation of Religious Freedom Act, Louisiana Revised Statutes §§ 13:5231–13:5242. However, Plaintiff did not reference this statute

in his complaint. *See* Record Document 1. The Fifth Circuit has held that plaintiffs are not permitted to raise new claims at the summary judgment stage.[8] *U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012). Accordingly, the Court will not evaluate Plaintiff's claims under Louisiana's Preservation of Religious Freedom Act.

### D.     Constructive Discharge

Plaintiff's motion for summary judgment appears to request that the Court enter summary judgment in his favor on the issue of whether or not he was constructively discharged from his job at SPD. Record Document 19-2, p. 28. He argues that his only choices were "to give up his sincerely held beliefs, face investigation and termination, or retire to avoid termination." *Id.* at 29. As discussed above, whether Plaintiff's religious beliefs were sincerely held is a factual question to be determined at trial. Therefore, it would be premature to enter summary judgment on a claim that is dependent upon the sincerity of those beliefs at this stage. To the extent that Plaintiff's partial motion for summary judgment asks the Court to find that he was constructively discharged, the motion is **DENIED**.

---

[8] The Court acknowledges that the Fifth Circuit does have a line of cases instructing district courts to treat a claim raised for the first time in a response to a motion for summary judgment as a motion to amend a complaint under Federal Rule of Civil Procedure 15(a). *See Riley v. School Bd. Union Parish*, 379 F App'x 335, 341 (5th Cir. 2010) (per curiam). However, the Fifth Circuit has also stated that treating a new claim raised in a response to a motion for summary judgment as a motion to amend is only required in certain compelling circumstances. *Harry v. Dallas Housing Auth.*, 662 F. App'x 263, 270 (5th Cir. 2016) (per curiam). Additionally, such a requirement has primarily been applied to claims raised in response to a motion for summary judgment, not to a new claim raised by a plaintiff in that plaintiff's own motion. Therefore, this line of cases does not preserve Plaintiff's new claim introduced at summary judgment.

**V.**     **Conclusion**

For the reasons set forth above,

Defendants' Motion for Partial Summary Judgment [Record Document 17] is **GRANTED IN PART** and **DENIED IN PART**.

The motion is **GRANTED** as to Plaintiff's official capacity claims against Crump, Kent, and Goodin. Those claims are hereby **DISMISSED WITH PREJUDICE**.

The motion is also granted as to the official and individual capacity claims against Beckius. All claims against Beckius are **DISMISSED WITH PREJUDICE**.

The motion is **DENIED** in all other respects.

Plaintiff's Motion for Partial Summary Judgment [Record Document 19] is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 22 day of August, 2019.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE